Dean JONES, d/b/a Jones & Co., Plaintiff in Error,

v.

Lowell FEATHERSTON and Donnie Featherston, Defendants in Error.

No. 39201.

Supreme Court of Oklahoma.

June 12, 1962.

Rehearing Denied July 10, 1962.

Arney, Barker & Donley, Clinton, for plaintiff in error.

Ruble & Ruble, Taloga, William R. Burkett, Woodward, for defendants in error.

JOHNSON, Justice.

This suit was begun by J. W. Brown, a sub-contractor, to enforce a lien upon the farm of defendants, Featherston and wife,

in the District Court of Dewey County, Oklahoma.

The plaintiff had constructed the foundation for a barn and erected the barn under agreement with one Dean Jones, the principal contractor, who was also made a defendant herein. Jones filed an answer and cross-petition against his co-defendants Featherston alleging that he had sold them a prefabricated barn, which he was to erect upon the farm for the sum of $5,315.15. He admitted the correctness of claim of plaintiff. This defendant then plead that the barn had been erected, and defendants Featherston had refused to pay for same. The cross-petition prayed for foreclosure of the lien which had been duly filed.

To the petition of plaintiff, the defendants Featherston answered and denied any contract with him. As to the cross-petition of Jones, the amended answer pleads:

"That on April 22, 1959, Clifford McNutt, acting as an agent, and the agent of Dean Jones, and the cross-petitioner herein, came to the home of the defendants, in Dewey County, State of Oklahoma, and offered to sell, completely erected, a metal building manufactured by Wonder Building Corporation of America, on the premises of the said defendants—representing that the building be 50 feet by 60 feet, metal round top, set on a cement foundation, and exhibited to the said defendants a sample of the metal to be used in the construction of the building—demonstrating this section to be able to bear the weight of a grown man and to be 22 gauge material, and representing the building would be suitable for the purposes of the said defendants, and would be weatherproof and waterproof. Said representations and samples acted as an inducement to the defendants to make said purchase, and warranted that the goods would be in all respects the same grade as the sample material.

"The said defendants, after examining the article, and relying on the recommendations of the plaintiff, purchased of the cross-petitioner a 50 x 60 metal building, for the sum of $5,048.-40. The said building to be erected on the defendants premises. That after the erection of the said building the defendants determined that the gauge of the metal on the said building was not 22 gauge, but 26 gauge, and that the building was not weatherproof or waterproof, and not suitable for the defendants as represented to them; and that the said building did not correspond to the samples and representations of the said cross-petitioner.

"That the defendants advised the cross-petitioner that the building was not as represented to them, and that it was not suitable, that they would not pay for the building—that the building is not of any use to the defendants, and the defendants are damaged to the extent of all the building.

"WHEREFORE, the said defendants pray the said plaintiff be denied any relief, and they go hence with their costs."

To this answer a reply containing a general denial was filed.

It will be observed that the answer of defendants Featherston did not contain any allegations supporting a claim for rescission, any tender of the return of the building or any plea of fraud, but limited the issue strictly to non-compliance with the contract. This is a legal defense and not an equitable one. There were only two complaints made in such answer: (1) The building was not waterproof and (2) was built of 26 gauge metal rather than 22 as represented.

There was much evidence introduced at the trial bearing upon issues not made by the pleadings; for example, whether the barn was mouse-proof or would withstand a ninety-mile wind. There was no proof sustaining either of these extraneous issues. The cause was submitted to a jury and a verdict rendered for defendants. From this result only the defendant Jones appeals.

The plaintiff J. W. Brown, sub-contractor, has not appealed. Jones will be herein referred to as plaintiff, and the Featherstons as defendants.

 Under the pleadings and proof this was neither an action for rescission, nor did it involve fraud. It was therefore an action for breach of warranty, and the defendants are limited to the recovery of damages, if any.

Such being the case, we must examine the instructions given by the court. Nos. 13 and 14 read as follows:

"You are further instructed that where a party seeks to enforce an instrument against the person who signed it, and the signer charges such a person with fraud in inducing him to sign said instrument on account of false and fraudulent representations concerning the contents of such instrument, and where the person signing such instrument acts upon such positive representations of fact, notwithstanding the fact that the means of knowledge were directly at hand and open to the person signing such instrument, and where said representations are of the character to induce signing said instrument and, in fact, did induce the signing of such instrument, such instrument constitutes fraud, and it is sufficient to vit*ate* or cancel the instrument, and it is immaterial whether the person signing such instrument was negligent in failing to use diligence or ordinary prudence to discover the falsity of such representation.

"F. B. H. SPELLMAN,
"District Judge."

"No. 14.

"You are further instructed that the basis for the claim of the cross-petitioner Jones against the defendants Featherston is what purports to be a contract between those two parties, and in this connection you are further instructed that in order for Jones to recover on said contract, he must show performance of the contract on his part. In this connection, you are further instructed that if you find from the evidence that said defendants Featherston were induced to sign said contract by means of any false and fraudulent representations by Jones or an agent of Jones, then and in that event said contract is null and void and your verdict shall be in favor of the defendants Featherston and against the cross-petitioner, Jones.

"F. B. H. SPELLMAN,
"District Judge."

 There is no element of fraud involved in this case. As was said in the fourth paragraph of the syllabus by the court in Beatrice Creamery Co. v. Goldman, 175 Okl. 300, 52 P.2d 1033:

"Fraud is never presumed. Where a written contract is attacked on that ground, the contract will be upheld unless the allegations of fraud are established by clear and convincing evidence, and the fraud must be predicated upon existing facts, and cannot consist of mere promises as to future action."

 If the finished product did not conform to the contract, the remedy is not based on fraud but on non-performance. These instructions should never have been given.

Instruction No. 16 reads as follows:

"No. 16.

"You are further instructed that if you find from the evidence that the cross-petitioner Jones, acting by or through the agency of one McNutt, induced the defendant Lowell Featherston to sign a contract by means of false and fraudulent representations, which contract called for construction by the said Jones of a barn of certain specifications on the property of the defendants Featherston, and that when constructed said barn did not meet the specifications agreed upon between Jones' agent and Featherston, either in the materials used or the manner of

construction and quality of labor, then and in that event you are instructed that your verdict should be in favor of the defendants Lowell Featherston and Donnie Featherston.

"F. B. H. SPELLMAN,
"District Judge."

There is no element of fraud involved in this case, either in the pleadings or the evidence. As was said in the fourth paragraph of the syllabus by the court in Beatrice Creamery Co. v. Goldman, 175 Okl. 300, 52 P.2d 1033:

"Fraud is never presumed. Where a written contract is attacked on that ground, the contract will be upheld unless the allegations of fraud are established by clear and convincing evidence, and the fraud must be predicated upon existing facts, and cannot consist of mere promises as to future action."

If the finished product did not conform to the contract, the remedy is not based on fraud but on non-performance. These instructions should never have been given.

Instruction No. 16 reads as follows:

"No. 16.

"You are further instructed that if you find from the evidence that the cross-petitioner Jones, acting by or through the agency of one McNutt, induced the defendant Lowell Featherston to sign a contract by means of false and fraudulent representations, which contract called for construction by the said Jones of a barn of certain specifications on the property of the defendants Featherston, and that when constructed said barn did not meet the specifications agreed upon between Jones' agent and Featherston, either in the materials used or the manner of construction and quality of labor, then and in that event you are instructed that your verdict should be in favor of the defendants Lowell Featherston and Donnie Featherston.

"F. B. H. SPELLMAN,
"District Judge."

■ This instruction does not embody the law. Under it *any* departure from the specifications compels the jury to find for the defendants. The rule in cases involving breach of warranty is set out in Stewart et al. v. Riddle et al., 76 Okl. 70, 184 P. 443, as follows:

" * * * Where the building is constructed and substantially completed according to the plans and specifications, the measure of damages for defects in the construction work is the cost of repairing the defects; but where the defects are such that they cannot be remedied without the destruction of some substantial part of the benefit which the owner's property has received by reason of the contractor's work, or where the cost of remedying the defect will not fully compensate the owner for damages suffered by him, the measure of damages is the difference in the value of the building as constructed and what it would have been if constructed strictly according to the plans and specifications."

The above case has been cited with approval in Smith v. Torr, Okl., 310 P.2d 378.

Applying the above rule, the court should have instructed the jury that if the only defect in the building as erected was that it was not waterproof that the cost of repairing and making it so is the measure of damages to be deducted from the contract price. If the gauge of the metal was not as contracted for, the measure of damages is that there is to be deducted from the contract price the difference in value between the contract price and the market value of the building as constructed. If both defects exist, then both such sums should be deducted from the contract price.

■ In the course of the erection of the barn by the plaintiff sub-contractor, Featherston gave a written acceptance of the work of the sub-contractor, as follows:

"July 8, 1959

"To Whom it May Concern:
"This is to certify that the 50' x 60' Wonder Building which was purchased

from Dean Jones Construction Company of Clinton, Oklahoma, has been erected by J. W. Brown Constr. Co. of Perryton, Texas and that the foundation and erection is satisfactory and has been accepted by me.

"/s/ G. L. Featherston"

The weight and effect of this acceptance in so far as it concerned the principal contractor is a question for the jury.

█ Complaint is also made concerning the admission of evidence about the representations of the seller's agent as being in violation of the parol evidence rule. We have already indicated that the only issues involved here concern the gauge of the metal and the leaking of the barn. Hence the evidence should have been limited to these matters. In regard to the first of these, the gauge of the metal was mentioned in the contract only by code designation which some of the witnesses could not explain. Hence the contract was subject to interpretation, and we hold the evidence concerning representations made as to the gauge of the metal to be competent. See King Collie Co. v. Richards, 76 Okl. 6, 184 P. 130.

█ As to the leaking of the barn, there was an implied warranty that the barn would be leak proof; consequently, any representations as to this would be harmless.

Judgment reversed for a new trial in conformity with this opinion.

WELCH, HALLEY, JACKSON and BERRY, JJ., concur.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON and IRWIN, JJ., dissent.

IRWIN, Justice (dissenting).

In my opinion, the controlling issue involved in this action is the type or gauge of metal of the building that plaintiff in error, Dean Jones, contracted to build for defendant in error, Lowell Featherston. Jones contends that he contracted to build a "wonder barn" with 26 inch gauge metal. Featherston contends the contract required the building to be constructed with 22 inch gauge metal. The building was constructed with 26 inch gauge metal.

Although the evidence is in conflict with reference to the gauge of the metal, according to the evidence adduced by Featherston, the building was to be constructed with 22 inch gauge metal and not with 26 inch gauge metal. There inheres in the verdict of the jury and the judgment rendered thereon that the parties agreed that the building would be constructed with 22 inch gauge metal.

The majority holds that if the gauge of the metal was not as contracted for, the measure of damages is that there is to be deducted from the contract price the difference in value between the contract price and the market value of the building as constructed.

In my opinion, this rule is not applicable in the case at bar. Featherston is not seeking damages from Jones for failure to perform the contract. On the contrary, Jones is seeking recovery from Featherston for performance of the contract and in my opinion, before he is entitled to recover he must at least show a substantial compliance with the contract. See 12 Am.Jur., Contracts, Sec. 328, wherein it is stated, "In regards to conditions precedent it is elementary rule of law that there must be at least a substantial performance thereof in order to authorize a recovery as for performance of the contract."

The record is barren of any evidence whatsoever which would indicate or even imply that a building constructed with 26 inch gauge metal substantially complies with a contract providing for construction with 22 inch gauge metal. The majority opinion does not require substantial performance, but holds that the measure of damages is the difference between the contract price and the market value of the building as constructed.

Since Jones failed to show a substantial compliance with the contract and Featherston disclaims any interest in the building, (the trial court found that Featherston disclaimed any interest or claim to the building and ordered and decreed that Jones be authorized and permitted to remove the building) Featherston should not be required to pay the market value of a building which he did not contract to have constructed.

I therefore dissent to the opinion promulgated by a majority of my associates.

Rehearing denied.

DAVISON and IRWIN, JJ., dissent.