## HOPKINS et al. v. WALKER et al.

No. 19365. Opinion Filed May 6, 1930.

Rehearing Denied Sept. 9, 1930.

Commissioner's Opinion, Division No. 2.

Embry & Embry and Embry, Johnson & Tolbert, for plaintiffs in error.

W. A. Chase, Thos. G. Andrews, and Clyde L. Andrews, for defendants in error.

DIFFENDAFFER, C. Defendants in error brought this action against plaintiffs in error to recover damages for alleged breach of contract for an oil and gas lease covering 80 acres of land owned by defendants and two minors.

The parties will be referred to herein as in the trial court. Defendant Hopkins owned a one-half interest in the land, Henry owned three-tenths interest, and the two minors owned the remaining two-tenths.

Plaintiffs rely upon an oral agreement of purchase of a lease upon said premises for the sum of $100 per acre, or $8,000, and the expense of procuring an abstract of title, and, in substance, allege: That it was agreed that the ownership of the land was as stated above; that defendants would each execute an oil and gas lease on "Producers 88 form" covering their respective interests in the land, and that through proper court procedure a guardian's lease covering the interest of the minors would be executed by defendant Henry, as the guardian of the two minors; that it was agreed that the name of the grantee in the leases to be executed by the two defendants was to be left blank to be filled in by plaintiff Walker; that the interest of the two minors would be sold at public sale through the county court of Lincoln county by the guardian, and that plaintiff Walker would bid thereon at the rate of $100 per acre, or $20 per acre for the minors' interest, which, when done and the bid if accepted and approved by the county court, the guardian's lease executed to plaintiff Walker, and the two leases executed by defendants should be forwarded to plaintiff Walker, together with the abstract of title, with draft attached drawn on plaintiff Walker through the Exchange National Bank of Tulsa, Okla., with five days allowed for ex-

amination of title; that the three leases were prepared and signed pursuant to the oral agreement and forwarded by defendants to the Exchange National Bank of Tulsa, Okla., together with the abstract of title attached to a draft payable in five days, for the purchase price and expense of procuring abstract, which was signed by defendants, and indorsed thereon, "Notify Geo. L. Walker;" that said leases and draft reached the bank in Tulsa, October 23, 1925, about noon; that about noon on October 26th, defendants, through the Bank of Davenport, Okla., directed the bank at Tulsa to return said draft, leases, and papers at once, and had refused to deliver same to plaintiffs; that plaintiffs have at all times been able and willing to comply with their contract and take said leases and pay therefor; that defendants repudiated and refused to comply with their agreement, and thereafter sold the lease to a third party for $125 per acre, whereby plaintiffs were damaged in the sum of $2,000.

Defendants answer by general denial, and further allege, in substance: That the oral negotiations were had substantially as alleged by plaintiffs, except they allege that plaintiffs were to accept and pay for said leases at once, or within 24 hours, instead of 5 days. They further pleaded the statute of frauds, and failure of plaintiffs to accept and pay for said leases within 24 hours.

Plaintiffs reply by general denial of new matter.

The cause was tried to a jury resulting in a verdict and judgment for plaintiffs in the sum of $2,000, from which judgment, after unsuccessful motion for new trial, defendants bring this appeal.

There are some ten assignments of error, but they go principally to three questions. The first is as to the statute of frauds. Defendants contend that the transaction comes within section 5034, C. O. S. 1921 (the statute of frauds), and which, among other things, provides that an agreement for the leasing of a longer period than one year, or for the sale of real property, or any interest therein, is invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged, or by his agent, and if signed by his agent, the authority of such agent be in writing subscribed by the party sought to be charged. Plaintiffs base their claim upon a breach of an oral agreement of which they claim there was a sufficient note or memorandum in writing subscribed by the defendants. Defendants contend that there was no such

sufficient note or memorandum subscribed by them.

There is no substantial conflict in the evidence as to what was actually done. A careful examination of the record will disclose that an agreement was entered into substantially as alleged in the petition. The only material conflict is that the plaintiffs' evidence tends to show that the leases were to be sent to the bank in Tulsa to be taken up and paid for within five days, whereas defendants' evidence was, in effect, as alleged in their answer, that the leases were to be taken up and paid for at once, or within 24 hours. The two leases of defendants were prepared on regular "Producers 88 Form" of oil and gas lease. Separate leases were signed by defendants covering their respective interests, leasing their interest in the land for a period of five years and as long thereafter as oil or gas or either of them is produced from said land by the lessee. The name of the lessee was left blank. The guardian's lease appears to have been executed in regular form with the name of George L. Walker, as lessee.

The leases after having been signed were taken by the defendants to the Davenport State Bank, where defendants requested an officer of the bank to draw draft on F. E. Remington, Exchange National Bank, Tulsa, Okla., which was signed by defendants in the following form:

```
C    "The Davenport State Bank of Daven-
U     port, Okla.
S          "Davenport, Okla., Oct. 20, 1926.
T
O    "Five Days Sight
M      "Pay to the order of Davenport
E    "State Bank _____$8,068.50
R       "Eighty Hundred Sixty Eight and
S       50/100 _____Dollars
         value received and charge same to ac-
D     count of
R     Notify George L. Walker
A    "To F. E. Remington
F      Exchange Nat'l. Bank, Tulsa, Okla.
T               A. N. Hopkins
                Iva. Tipton Henry."
```

The leases, with the abstract of title, the cost of which was $68.50, and the draft, were forwarded to the Exchange National Bank, Tulsa, Okla., arriving there on the 23rd day of October, 1926. Walker and Remington were notified, and went to the bank for the purpose of procuring the abstract for examination of title. In the meantime plaintiffs had apparently made arrangement with the Selby Oil Company for the sale to it of the leases upon approval of title.

Defendants requested the State Bank of Davenport to notify the Tulsa bank to return all the papers at once. This was on or about the 26th day of October, or three days after the Tulsa bank had received the same. Plaintiffs protested against the Tulsa bank returning the papers and attempted to have the bank enjoined from returning same, but before an order could be served, the papers were all returned to the Davenport State Bank or to defendants, and the leases, at once, or within a few days thereafter, were sold by defendants to one Floyd G. Hubbell for $125 per acre, or $10,000.

The same leases that had been signed by defendants and sent to Tulsa were used in conveying their interests to Hubbell, the only change being the insertion of his name as lessee.

The one and only question then, so far as the statute of frauds is involved, is: Was there a sufficient memorandum of the agreement subscribed by defendants to take the agreement out of the statute of frauds?

Defendants contend that, because there was no lessee or grantee named in the leases which they signed, the case is within the rule stated in 27 C. J. 275, which is:

The memorandum must state who are the parties to the contract, either by naming them, or by so designating or describing them, that they may be recognized or identified without fair or reasonable doubt or dispute. It must contain the names or sufficient descriptions of both parties to the contract, not only the person to be charged, but also the person in whose favor he is to be charged. An agreement for a lease should show both the lessor and the lessee."

A number of cases are cited which support the foregoing general rule.

There is some conflict in the authorities as to whether or not an undelivered deed or lease of real estate signed by the grantor or lessor is a sufficient memorandum of an oral agreement of sale, or lease, to take such agreement out of the statute of frauds. But the rule seems to be well established in this state that such deed or lease is a sufficient memorandum. In Shuerer v. Crockett, 108 Okla. 218, 236 Pac. 30, it was held:

"Where the vendor, pursuant to a parol agreement to convey lands, executes a deed to the vendee, and deposits the same in escrow to be delivered to the vendee upon the payment of the balance of the purchase price, and the recitals of such deed contain the terms of the parol agreement, including the consideration, it is a sufficient compliance with the statute of frauds."

"The recitals of a deed which describes

the subject-matter, names the vendor and vendee, and states the consideration, is not insufficient as a memorandum by reason of its failure to state the time of payment, as such omission is supplied by section 5060, Comp. St. 1921."

See, also, Rose v. First Nat. Bank, 93 Okla. 120, 219 Pac. 715; Akers v. Brooks, 103 Okla. 98, 229 Pac. 544; Arnett v. Wescott (Kan.) 193 Pac. 377.

These cases fully support the contention of plaintiffs, except that herein the name of the lessee was not inserted in the leases subscribed by defendants. The question then arises: May we consider other separate writings, to supply this omission? In 27 C. J. 259, the following rule is announced:

"The note or memorandum required by the statute of frauds need not be contained in a single document, nor, when contained in two or more papers, need each paper be sufficient in contents and signature to satisfy the statute. Two or more writings properly connected may be considered together, matters missing or uncertain in one may be supplied or rendered certain by the other, and their sufficiency will depend upon whether, taken together, they meet the requirements of the statute as to contents and signature. The rule is frequently applied to two or more, or a series of, letters or telegrams, or letters and telegrams sufficiently connected to allow their consideration together. But the rule is not confined in its application to letters and telegrams; any other documents can be read together when one refers to the other."

Numerous cases are cited in support of the text, including Barnes v. Hunt, 73 Okla. 92, 175 Pac. 215, where it was held:

"A complete contract, binding under the statute of fraud, may be made through the medium of letters, writing, etc., signed and passing between the parties, when such writings are so related to the subject-matter and so connected with each other that it may be fairly said they constitute one paper relating to the contract."

The same paragraph of 27 C. J., at p. 261, in connection with the particular omission here under consideration, is stated:

"Matters not contained in one paper, or not stated therein with sufficient definiteness and certainty, such as the name of a party, * * * are frequently found to be adequately stated in another paper which is sufficiently connected with the former paper to justify their consideration together."

In support of the latter rule is cited Warner v. Willington (Eng.) 3 Drew, 523, 61 Reprint, 1002, wherein separate letters were held sufficient to supply the name of the lessee. Also, Pearce v. Gardner (Eng.) 12 B. 688, 1897, wherein it was held:

"An envelope and a letter which is shown by evidence to have been inclosed in it are so connected together that the envelope may be used to supply the name of one of the parties to a memorandum in writing of a contract with s 4 of the statute of frauds, or s 4 of the Sale of Goods Act, 1893."

Here we have the draft signed by defendants for the full consideration, including the interest of the two minors, which draft named both plaintiffs, Remington, as drawee, and a notation to notify George L. Walker. Also, the guardian's lease which was inclosed with the leases signed by defendants, and in which plaintiff Walker was named as lessee. These were all so connected, the one with the other, as to sufficiently identify the lessee.

Defendants also contend that the court erred in admitting evidence as to the oral contract or agreement. As heretofore stated, plaintiffs do not base their claim upon a contract in writing, but upon an oral agreement supported, as they contend, by memorandum thereof in writing subscribed by defendants. Where a contract in writing is relied upon, only the writing is to be looked to as what the contract was, except where the writing is ambiguous, or contains technical terms, etc., which require explanation.

It will be observed that the statute applies to two methods by which contracts or agreements affecting real estate are to be taken out of the statute of frauds. First, where the contract or agreement is itself in writing. Second, where the agreement is oral, but there is a note or memorandum thereof in writing subscribed by the party sought to be charged. The latter clause or provision is not, as we understand the decision, intended to apply to written contracts, but to the enforcement of oral contracts when evidenced by a sufficient memorandum in writing subscribed by the party sought to be charged. Warfield v. Wis. Cranberry Co. (Iowa) 19 N. W. 224. In such cases an oral agreement is presupposed. It is proper to prove the oral agreement. But in addition thereto sufficient memorandum thereof in writing subscribed by the party sought to be charged must be shown before such party will be bound. There was no error admitting the evidence of the oral agreement.

Defendants further contend that the court erred in refusing to permit them to testify, in substance, that, when they caused the draft to be written at the Davenport State Bank, they instructed Mr. C. F. O'Dell to

draw a one-day sight draft, and that by mistake the five-day draft was written. There was no error in refusing this testimony. It was a clear attempt to vary the terms of the written instrument which they admitted they signed, and shows an error or mistake made by their own agent, where plaintiff was in no way connected therewith.

They were permitted to testify that their oral agreement with plaintiffs was that the leases should be accepted and paid for at once or at most within 24 hours. This question of fact was properly submitted by the court to the jury, and the jury was instructed that if they believed from the evidence that defendants were to accept and pay for said lease within 24 hours, then their verdict should be for defendants. By this instruction, defendants' rights were properly protected in this regard.

There are other assignments going to the alleged insufficiency of the evidence and the refusal of the court to sustain a demurrer to plaintiffs' evidence. But what we have heretofore said fully covers these assignments.

We find no reversible error in the record, and the judgment should therefore be affirmed.

BENNETT, HERR, HALL, and EAGLETON, Commissioners, concur. ANDREWS, J., disqualified and not participating.

By the Court: It is so ordered.